UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| HEATHER HULWICK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-468-TLS |
| CBOCS EAST, INC. d/b/a "CRACKER BARREL", | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Cracker Barrel Old Country Store, Inc.'s,[1] Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint [ECF No. 28] filed on April 30, 2018. Plaintiff Heather Hulwick filed her Response [ECF No. 38] on May 21, 2018, and the Defendant filed its Reply [ECF No. 41] on June 4, 2018. At issue is whether the Plaintiff is subject to an Arbitration Agreement that the Defendant's records indicate that she signed. This matter is now fully briefed and ripe for review.

**BACKGROUND**

The Plaintiff applied for employment with the Defendant on February 16, 2005, and was hired as a manager for the Defendant. The Plaintiff worked for the Defendant for approximately twelve years prior to her discharge on October 16, 2016. The Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a Notice of Right to Sue on July 12, 2017, after which she filed this action. The Plaintiff alleges

---

[1] The Defendants notes that it was incorrectly identified in the Plaintiff's Complaint as CBOCS East Inc. d/b/a "Cracker Barrel."

that the Defendant unlawfully discriminated against her in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, and retaliated against her for filing a claim of sexual harassment with the EEOC. (*See* Compl. ¶¶ 4–6.)

In 2015, an Arbitration Agreement was presented to the Defendant's employees via the Cracker Barrel University ("CBU") online training program. In order to access the CBU training modules, each employee needed to use a unique access code. The Arbitration Agreement is contained within the Alternative Dispute Resolution ("ADR") module, and the employee is given the opportunity to review, read, and agree to comply with the Arbitration Agreement. After the Arbitration Agreement is presented to the employee, the employee is instructed to close the document and click "Mark Complete." Once the employee clicks the "Mark Complete" button, CBU records the date and time that the employee completed the module and acknowledged the Arbitration Agreement.

The Defendant's records indicate that the Plaintiff completed the ADR module on November 5, 2015, at 5:36 A.M. Thus, the Defendant argues that the Plaintiff's claims are subject to the provisions of the Arbitration Agreement. The Plaintiff asserts that she never logged in to CBU on November 5, 2015, much less reviewed and marked complete the ADR module. The Plaintiff theorizes that somebody else used her password, which she asserts was posted in a place that all management employees could access, in order to log into CBU and mark complete the ADR module. She contends that such action would be consistent with the pressure that the general manager would feel to ensure that each employee successfully completed the training modules.

**STANDARD OF REVIEW**

The burden to avoid compelled arbitration is analogous to that required to successfully oppose summary judgment under Rule 56. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). That is, "the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* The Court notes that the summary judgment standard is appropriate also because the parties have presented matters outside the pleadings in support of their arguments. *See* Fed. R. Civ. P. 12(d).

**ANALYSIS**

Whether parties are contractually bound to arbitrate, and what issues they are bound to arbitrate, are matters to be determined by the Court. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). The parties must have agreed to submit the disputes to arbitration because the arbitration agreement is the source of the arbitrator's authority to resolve those disputes, and a party may not be forced to arbitrate any dispute that the party did not agree to arbitrate. *See AT&T Techs., Inc. v. Comm's Workers of Am.*, 475 U.S. 643, 648–49 (1986).

The Federal Arbitration Act ("FAA") applies to employment agreements. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Courts must be mindful that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements and that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Cont'l Cas., Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005) (internal quotations omitted). The FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Under the FAA, "arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citations omitted). It appears that the dispute in this case centers on the first element, i.e., whether there is a written agreement to arbitrate between the parties. There does not appear to be a dispute that the Plaintiff's claims would be subject to the arbitration agreement if it is enforceable, and it is evident that there is a refusal to arbitrate.

In determining whether there is an enforceable arbitration agreement, the Court must look to state law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Indiana courts apply ordinary contract principles to arbitration agreements." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). As the party opposing arbitration, it is the Plaintiff's burden to establish a genuine issue of material fact that requires a fact-finder to decide the issue. She cannot meet this burden by conclusorily denying the Defendant's contentions without pointing to evidence in the record to support her assertions. *See Tinder*, 305 F.3d at 735.

The Plaintiff's argument is as follows: on November 5, 2015, she did not log into CBU and therefore never reviewed, read, or marked complete the arbitration agreement at issue. Nor, she asserts, would she have done so at 5:36 A.M., the time her alleged completion occurred, because that time of the morning was the busiest time of day for her. The Plaintiff asserts that the individual login credentials referenced by the Defendant were not unique and were kept on a list on a clip board to which the managers and assistant managers had access. Thus, if the store

4

manager was behind in ensuring all employees logged in and completed the CBU modules, the general manager could have easily instructed somebody else to log in on behalf of other employees and "complete" the modules without those employees' knowledge. The Plaintiff supports her assertion by averring that she personally witnessed training coordinators at multiple locations "complete" the training modules on behalf of other employees in response to pressure to achieve full compliance. In sum, the Plaintiff argues that she neither read nor agreed to the arbitration agreement, and there was therefore no meeting of the minds between the parties that would support an enforceable agreement.

The Defendant asserts that managers were never asked to complete modules on behalf of employees, and there was no pressure to achieve full compliance because there were no penalties associated with employees failing to complete the CBU modules. The Defendant further responds that only the Plaintiff could have accessed her account on CBU and therefore is the only person that could have completed the ADR module. First, the Defendant asserts that the Plaintiff was the only manager, associate manager, or senior manager present at the store until 7:00 A.M., well after the time at which the Defendant's records indicate that the Plaintiff completed the module. Nor was the employee training coordinator assigned to the Plaintiff's store present that day.

The Defendant also argues that the Plaintiff's assertion regarding access to employees' unique passwords is incorrect. First, the list to which the Plaintiff refers contains employee identification numbers, which are used as employees' user names for CBU. However, in order to access CBU, employees also need a password. Each employee is initially assigned a generic password, which they are prompted to change upon logging in for the first time. No other employee, including managers, would have access to or a record of that password once chosen

by the employee. The Plaintiff created her password on February 3, 2014, and records indicate that it has not been changed since then.

According to the Defendant, it is not relevant whether the Plaintiff remembers acknowledging the arbitration agreement. In support of its argument, the Defendant cites this Court's decision in *Rohde v. Family Dollar Stores of Ind., LLC*, No. 1:17-CV-225, 2017 WL 5467155 (N.D. Ind. Nov. 13, 2017). In *Rohde*, the Plaintiff accepted employment with Family Dollar by electronically signing an offer letter. 2017 WL 5467155, at *2. As part of this process, the plaintiff had to create her own unique username and password to access the onboarding documents. *Id.* After clicking an acknowledgement of the letter, the Plaintiff was presented with a complete electronic version of the arbitration agreement, which she electronically signed. *Id.* A copy of the arbitration agreement was sent to her personal email address. *Id.*

The defendant in *Rohde* kept records in the regular course of business that showed that the plaintiff had, in fact, electronically signed and acknowledged the arbitration agreement. *Id.* at *3. The Court found that assent to the arbitration agreement was a condition of employment and that the plaintiff had assented to it when she electronically signed it. *Id.* at *4. The Court was not persuaded by the plaintiff's assertion that she did not recall executing the arbitration agreement, noting that "assertions by parties that they do not recall signing an arbitration agreement, without more, are insufficient to challenge the existence of the agreements." *Id.* (internal quotations omitted); *see also DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 903 (N.D. Ind. 2001) (finding that the plaintiff's assertion that she did not recall signing an arbitration agreement was insufficient to show that there was no meeting of the minds).

The Defendant asserts that the instant case is factually analogous to *Rohde* and *DeGroff*. In the instant case, the Defendant's records, kept in the normal course of business, indicate that the Plaintiff logged in to CBU with her employee identification number and unique password.

6

That the Plaintiff was the only manager in the store at the time she supposedly completed the ADR module bolsters the conclusion that she, herself, reviewed and signed the arbitration agreement. Thus, the Defendant argues, regardless of whether the Plaintiff remembers completing the ADR module is irrelevant, and the Court should decide this case in the same manner in which it decided *Rohde*. The Defendant contends that the Plaintiff offers no support other than her own assertions whereas the Defendant has presented evidence that there was no pressure to have all employees complete the module because there were no consequences for a failure to obtain acknowledgments from each employee, undermining the Plaintiff's speculative theories. (*See* Thompson Decl. 2.)

The Court notes that the instant case is distinguishable from *Rohde*. Here, the Plaintiff does not assert only that she does not recall signing the Arbitration Agreement; she affirmatively asserts that she did not sign it and proposes an alternative reason her electronic signature appears in the Defendant's record. Other courts have found that this is an important distinction. *See, e.g.*, *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028, 2009 WL 4798873, at *17 (C.D. Cal. Dec. 9, 2009) (distinguishing cases in part based on the plaintiff's affirmative representation that she did not receive a brochure rather than merely did not "recall" receiving the brochure). Indeed, one court has found that Seventh Circuit precedent presents a "straightforward rule" regarding this distinction: "when the plaintiff submits an affidavit stating that he does not recall receiving a letter, there is no triable factual dispute, but when the plaintiff submits an affidavit in which he denies receiving a letter, a triable dispute exists." *Gupta v. Morgan Stanley Smith Barney, LLC*, No. 17 C 8375, 2018 WL 2130434, at *2 (N.D. Ill. May 9, 2018). However, in *Bordick* and *Gupta*, the defendants produced no evidence to dispute the plaintiffs' claims other than their own affidavits that it was their custom and policy to send the documents that the plaintiffs were supposed to have received. In the instant case, there are records that the Arbitration Agreement

7

was, in fact, accessed; it is merely whether the Plaintiff was the person who accessed it that is at issue.

The Court finds the decision in *Versmesse v. AT&T Mobility LLC*, No. 3:13 CV 171, 2014 WL 856447 (N.D. Ind. Mar. 4, 2014) to be more persuasive. In *Vermesse*, the defendant sent an email to all of its management-based employees regarding the implementation of an arbitration program. 2014 WL 856447, at *1. The email included a link to the full text of the arbitration agreement. *Id.* at *2. The page with the full text of the agreement also contained a button marked "Review Complete," and the viewer was asked to click that button to confirm that he or she had seen the agreement. *Id.* The defendant was able to present evidence that this email had been sent to the plaintiff's work email address and that somebody accessed the email and the accompanying page containing the text of the agreement using the plaintiff's username and password. *Id.* at *3. However, the plaintiff submitted an affidavit affirmatively stating that she did not receive the email, and therefore had no knowledge of the arbitration policy. *Id.* at *4. Thus, she argued that there were genuine issues of fact regarding the existence of an arbitration agreement. *Id.*

The court in *Versmesse* noted that "the only evidence plaintiff in this case has submitted in support of her position that she never saw the arbitration email or had any knowledge of the arbitration agreement is her own statement that she never received any email regarding the arbitration agreement." *Id.* at *5. However, the plaintiff did not dispute that the email "was in fact sent to and viewed by someone using her company email account, as evidenced by the records provided by defendant." *Id.* The plaintiff's response to this evidence was that somebody else must have used her login information to access her account. *Id.* at *5 n.4. The court found that the plaintiff had not raised a factual issue regarding whether she was bound to the arbitration agreement because she needed to do more than "simply provide evidence, in the form of her own

8

statement, that she did not see the arbitration agreement notice, when faced with undisputed evidence that the notice was sent to the plaintiff." *Id.* at *5 (citations omitted).

As in *Versmesse*, there is no dispute that the ADR module through CBU was accessed and completed "by someone accessing her account using her username and password." *Id.* But, similarly, the Court finds the Plaintiff's argument that somebody else must have accessed the ADR module through her account is speculative and unavailing. The Plaintiff needed to "come forward with some evidence, other than her own statement that she did not [review the Arbitration Agreement], that would raise an issue of fact concerning the formation of the arbitration agreement." *Id.* She has not done so. Therefore, the Court finds that the Plaintiff has failed to meet her burden to show a genuine issue of material fact regarding the formation of the Arbitration Agreement, and the Court will compel the Plaintiff to arbitrate her claims against the Defendant.

## CONCLUSION

For these reasons, the Court GRANTS the Defendant's Motion to Compel Arbitration and to Dismiss the Plaintiff's Complaint [ECF No. 28].

SO ORDERED on June 11, 2018.

         s/ Theresa L. Springmann
        CHIEF JUDGE THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT